UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DALE ALLEN ABBOTT, II,           ) | |
|                                              ) | |
|             Plaintiff,                  ) | |
|                                              ) | |
|        v.                                ) | Case No. 4:22-cv-526 MTS |
|                                              ) | |
| DANNY FRANCIS, et al.,          ) | |
|                                              ) | |
|             Defendants.             ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented plaintiff Dale Allen Abbott, II for leave to commence this civil action without prepayment of the required filing fee, Doc. [4], motion for a restraining order, Doc. [3], and motion for appointment of counsel, Doc. [2]. Having reviewed the motion to proceed without prepayment, and the financial information submitted in support, the Court has determined plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $106.40. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the pleading under 28 U.S.C. § 1915(e)(2), the Court finds plaintiff's complaint fails to state a claim for relief, but he will be permitted to submit an amended complaint. Plaintiff's other motions will be denied.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After

payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed *in forma pauperis*, plaintiff submitted a copy of his certified inmate account statement. Doc. [5]. A review of plaintiff's account from the relevant period indicates an average monthly deposit of $8.50 and an average monthly balance of $532.02. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $106.40, which is 20 percent of plaintiff's average monthly balance.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff Dale Allen Abbott, II is an inmate currently incarcerated at Potosi Correctional Center ("PCC") in Mineral Point, Missouri. He filed the instant complaint on a Court-provided 'Prisoner Civil Rights Complaint' form pursuant to 42 U.S.C. § 1983. Doc. [1]. Plaintiff names three defendants: (1) Warden Danny Francis; (2) Dr. Harry; and (3) Nurse Marrissa. Plaintiff indicates he is bringing this action against Warden Francis and Dr. Harry in their official capacities only, but does not specify in what capacity he is suing Nurse Marrissa.

In the statement of claim section of the form complaint, plaintiff alleges he is "being forced medication without a court order." *Id.* at 4. He states that when he refuses the medication he is "tackled," "stripped naked," "held down," "give[n] a shot," and "placed in a suicide cell" where he does not have access to soap, tissues, or toilet paper, and is fed out of a brown bag. *Id.* He

3

further alleges he has only been given one set of clothing, and has been denied showers and towels. *Id.* He states he has seen defendant Dr. Harry, a psychiatrist, but they are unable to communicate because he is a "foreign doctor." *Id.* He also takes issue with his prescribed medication, explaining: "I was on Respidal [sic] on the . . . streets when I was free. Now I'm on Xyprexson [sic]. It's not working at all." *Id.* He further claims he has received 10 conduct violations since last August with no due process. Plaintiff does not identify who allegedly forces him to take medication, places him in a suicide cell with limited supplies, prescribes him medication, or denies him due process.

Plaintiff describes his injuries as "knees, tooth, self respect, [and] dignity." *Id*. For relief, he seeks "immediate transfer," to be released to "general population," and to "fix [his] tooth." *Id.* at 5. He does not seek any monetary damages. Under the "Relief" section, plaintiff asserts he is in "imminent danger of serious physical harm" and "fear[s] for [his] life due to this litigation" because "they've threatened [him] with an extension of more punishment[.]" *Id.*

## Discussion

**A. Official Capacity Claims**

Plaintiff explicitly indicates he is suing defendants Warden Francis and Dr. Harry in their official capacities only. *Id.* at 2-3. He is silent as to whether he brings this action against Nurse Marrissa in her official capacity, individual capacity, or both. When a plaintiff does not specify whether a defendant is being sued in her personal or official capacity, the court interprets the complaint as including only official capacity claims. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995). This pleading requirement is strictly enforced by the Eighth Circuit. *See Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997). Thus, the Court will interpret the instant complaint as stating only official capacity claims against the three named defendants.[1]

---

[1] The Court notes that even if plaintiff's complaint sued defendants in their individual capacities, such claims would be subject to dismissal because he does not make any direct allegations against a specific defendant. *See Krych v.*

4

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). In other words, naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). In this case, defendants Warden Francis is employed by the MDOC, or the State of Missouri. As such, the official capacity claims against him are treated as being made against the State itself. Defendants Dr. Harry and Nurse Marrissa are medical providers and the State of Missouri has contracted with Centurion Health to provide all medical care in its Department of Corrections facilities. As such, plaintiff's claims against them are treated as being made against Centurion.

Plaintiff does not seek monetary damages, and his complaint cannot be liberally construed to seek such relief. To the extent that plaintiff seeks injunctive relief, he must demonstrate the liability of the State of Missouri or Centurion for harming him. *See Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official . . . policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an

---

*Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of plaintiff's complaint against defendants who were listed as defendants in the complaint, but there were no allegations of constitutional harm against them). Although plaintiff alleges he was forcibly given medication, denied supplies, and issued conduct violations without a hearing, he does not allege that any of the three named defendants were responsible for such actions or even knew such events occurred. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (*respondeat superior* theory inapplicable in § 1983 suits).

extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the State of Missouri or Centurion.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." *See Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the governmental entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting that the State of Missouri or Centurion has harmed him due to an unconstitutional policy, custom, or failure to train.

First, plaintiff has not established the existence of an unconstitutional policy. While he challenges the use of forced medication for treatment of his mental health disorder, he has not presented any facts regarding the existence or application of any forced medication policy by the State of Missouri or Centurion. In other words, he does not allege the denial of an adversarial proceeding within the facility was the result of a state mandated policy.[2] Additionally, plaintiff

---

[2] "To meet the procedural requirements of Due Process in the involuntary administration of antipsychotic drugs to a prisoner, there must be: (1) notice; (2) the right to be present at an adversarial hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. *Kennemore v. Dep't of Mental Health*, 2022 WL 1223629, at *11 (E.D. Mo. Apr. 26, 2022) (citing *Washington v. Harper*, 494 U.S. 210, 231 (1990)). *See also Doby v. Hickerson*, 120 F.3d

7

does not assert any facts regarding an unconstitutional policy related to suicide cell assignments or the issuance of conduct violations.[3] As to his claim regarding a preference for a different medication, it unequivocally fails to state a constitutional violation. *See e.g.*, *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) ("A mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

Second, plaintiff has not demonstrated that he was harmed by an unconstitutional custom, as he has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [State of Missouri's or Centurion's] employees," much less that policymakers were deliberately indifferent to or tacitly authorized such misconduct. Far from describing a "persistent pattern of unconstitutional misconduct," plaintiff's allegations solely involve his own treatment within PCC.

Third, plaintiff has not alleged that the State of Missouri or Centurion were deliberately indifferent in failing to train or supervise its employees. To show deliberate indifference, plaintiff must prove that the state "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically this is satisfied by alleging a "pattern of similar constitutional violations by untrained employees." As noted above, plaintiff's facts do not properly allege a constitutional violation, let alone a pattern.

---

111, 113 (8th Cir. 1997) (explaining that the "minimal constitutional requirements for satisfying procedural due process when a state involuntarily administers antipsychotics to a prisoner" consists of "an independent decisionmaker as well as for notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses"). "A judicial hearing is not required, and the hearing may be adjudicated by non-treating medical personnel." *Id.*

[3] In order to make a claim he was denied due process in receipt of a conduct violation, plaintiff would have to allege the punishment he received as a result of the flawed disciplinary process was an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Burke v. St. Louis County Jail, et al.*, 2022 WL 1718868, at *8 (E.D. Mo. May 27, 2022) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Plaintiff makes no such claim here.

8

Finally, to the extent plaintiff might seek to hold the State of Missouri or Centurion liable for the actions of its employees, the Court notes that either entity cannot be held liable under 42 U.S.C. § 1983 simply because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a [governmental entity] . . . cannot be liable on a *respondeat superior* theory"); *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) (citing *Sanders v. Sears Roebuck and Company*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("A corporation acting under color of state law . . . will not be liable on a respondeat superior theory.").

For all the reasons discussed above, plaintiff has failed to state official capacity claims against defendants and his complaint is subject to dismissal.

**B. Request for Immediate Transfer**

The only relief plaintiff seeks is the Court to order his immediate transfer to another correctional institution, to be released into general population, and to fix his tooth. Such relief is not available to him in this action.

First, transfers to another prison are entirely within the discretion of prison officials, *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir.1984), and prisoners have no justifiable expectation that they will be incarcerated in any particular prison within a state. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Murphy v. Missouri Dept. of Correction*, 769 F.2d 502, 503 (8th Cir. 1985). Prison authorities have a great deal of discretion in running their institutions, and such discretion normally outweighs any interest that any individual prisoner may have in remaining housed in a particular prison. *Rouse v. Benson,* 193 F.3d 936, 940 (8th Cir. 1999). Any protected interest plaintiff might have in being incarcerated in a particular state prison would have to be created by state law. *See Hewitt v. Helms*, 459 U.S. 460, 469 (1983). Plaintiff has failed to allege the existence of such a law.

Second, "constitutionally speaking, assignments [by correctional institutions] are discretionary, so long as they are not done for prohibited or invidious reasons and do not rise to independent constitutional violations on their own weight." *Moorman v. Thalacker*, 83 F.3d 970, 973 (1996) (citing *Vitek v. Jones*, 445 U.S. 480 (1980); *Sisneros v. Nix*, 884 F. Supp. 1313, 1346 (S.D. Iowa 1995)). While plaintiff may disagree with his placement in segregation within a suicide cell, inmates have no constitutional right to any specific classification or housing assignment. *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993). Plaintiff provides no facts to support that his placement in PCC was done for an unconstitutional reason.

Lastly, as to plaintiff's request to "fix [his] tooth," such relief cannot be granted as he does not allege any constitutional violations in his statement of claim related to the provision of dental care or any incidents involving damage to his teeth due to the behavior of a state actor.

**C. Motion for Restraining Order**

Plaintiff filed a document titled "Petition for Restraining Order" at the same time he filed his complaint. Doc. [3]. The document does not provide any support for the requested relief, instead, the motion states in its entirety: "Now comes pla[i]ntiff to move this Court to move in favor of pla[i]ntiff as these atrococities [sic] continue to accourr [sic] daily. Therefore pla[i]ntiff prays this honorable court approves this most favorable motion." *Id.*

A Court issues injunctive relief in a lawsuit to preserve the status quo and prevent irreparable harm until the Court has the opportunity to rule on the lawsuit's merits. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). In determining whether to issue a preliminary injunction, the Court must consider four factors: (1) the threat of irreparable harm to the movant; (2) the potential harm to the nonmoving party should an injunction issue; (3) the likelihood of success on the merits; and (4) the public interest. *See Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640

F.2d 109, 113 (8th Cir. 1981). These same standards also apply to a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming application of *Dataphase* factors to a motion for a temporary restraining order). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting" injunctive relief. *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The burden of proof is on the party seeking injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

"The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982). Thus, the inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The Court is mindful of the Eighth Circuit's admonition that "in the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d at 1214). "It is therefore all the more important that federal courts abstain from imposing strict standards of conduct, in the form of injunctions, on prison officials in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief." *Rogers*, 676 F.2d at 1214.

After weighing the *Dataphase* factors listed above, the Court finds plaintiff has failed to demonstrate at this stage of the proceedings that he is likely to succeed on the merits of his claims

11

and that he will suffer an immediate and irreparable injury if the requested relief is denied. Plaintiff's two sentence request in his "Petition for Restraining Order" fails to demonstrate a valid basis for the issuance of such drastic relief, and his complaint does not provide any evidence his life is imminent danger or that if the Court does not transfer him to another institution there he will suffer irreparable injury. As discussed above, plaintiff has not properly alleged a cause of action under § 1983 against defendants in their official capacities, and he has not established a constitutional violation on the part of defendants. Significantly, there are no factual allegations against the named defendants in the motion or the complaint. *See Taylor v. Potosi Correctional Center*, 2021 WL 351972, *3 (denying motion for restraining order because plaintiff had "yet to file a complaint that survives initial review" and "therefore cannot be said that specific facts in a verified complaint clearly show he will suffer immediate and irreparable injury, loss or damage before the adverse party may be heard in opposition.").

Moreover, plaintiff's request for this Court to return him to the general population and transfer him to another institution are not avenues of relief that are likely to succeed in a civil rights complaint. *See Clark v. Browers*, 2005 WL 1926088, at *3 (E.D. Mo. Aug. 10, 2005) (dismissing motion for restraining order requesting transfer to a different facility because "plaintiff does not have a right to be held in the institution of his choosing").

Plaintiff has not carried his burden of showing that a temporary restraining order should be issued. Therefore, plaintiff's motion for a restraining order will be denied without prejudice.

**Instructions for Amending Complaint**

As discussed above, the Court finds multiple pleading deficiencies in plaintiff's complaint against the three named defendants. However, because plaintiff is self-represented and claims for forcible medication and conditions of confinement are serious allegations, he will be allowed

to amend his complaint on a Court-provided form in accordance with the instructions set forth below.

Plaintiff is advised that the filing of an amended complaint completely replaces the original complaint and the amended complaint, so it must include all claims plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Plaintiff must type or neatly print the amended complaint on the Court-provided prisoner civil rights complaint form, and the amended complaint must comply with the Federal Rules of Civil Procedure. *See* E.D. Mo. L.R. 2.06(A).

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner. Even self-represented litigants are obligated to abide by the Federal Rules of Civil Procedure and to plead specific facts as to each named defendant. *See U.S. v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Plaintiff is required to set out his alleged claims in a simple, concise, and direct manner, and also the facts supporting his claims as to each named defendant. *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); 8(d)(1) (each claim shall be simple, concise, and direct); 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances). Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Plaintiff must indicate whether he intends

to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim(s).

In the "Statement of Claim" section, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write the specific facts supporting his claim or claims against that defendant. If plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant. Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant, and set forth as many claims as he has against him or her. *See* Fed. R. Civ. P. 18(a). Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal. Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim."). For example, plaintiff names Warden Francis as a defendant

in the instant case but does not explain his personal involvement in the alleged constitutional violations. It is well settled that "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.").

If plaintiff fails to file an amended complaint on a Court-provided form within thirty (30) days in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to plaintiff.

### Motion to Appoint Counsel

Lastly, plaintiff has filed a motion for appointment of counsel. Doc. [2]. In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the self-represented litigant to investigate the facts, the existence of conflicting testimony, and the ability of the self-represented litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After considering these factors, the Court finds that the appointment of counsel is unwarranted at this time. Plaintiff has yet to file a complaint that survives initial review, so it cannot be said that he has presented non-frivolous claims. Additionally, this case appears to involve straightforward factual and legal issues, and there is no indication that plaintiff cannot investigate the facts and present his claims to the Court. The Court will therefore deny his motion without prejudice, and will entertain future motions for appointment of counsel, if appropriate, as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis,* Doc. [4], is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $106.40 within thirty (30) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel, Doc. [2], is **DENIED** at this time without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's Petition for Restraining Order, Doc. [3], is **DENIED** at this time without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff two blank Prisoner Civil Rights Complaint forms. Plaintiff may request additional forms as needed.

**IT IS FURTHER ORDERED** that plaintiff must file an amended complaint on the Court's form within **thirty (30) days** of the date of this Order. Plaintiff is advised that his amended

16

complaint will take the place of his original complaint and will be the only pleading that this Court will review.

**IT IS FURTHER ORDERED** that upon submission of the amended complaint, the Court shall again review this action pursuant to 28 U.S.C. § 1915.

**IT IS FURTHER ORDERED** that if plaintiff fails to timely comply with this Memorandum and Order, the Court will dismiss this action without prejudice and without further notice.

Dated this 15th day of June, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE